Good morning. May it please the Court. My name is Harini Raghupathy. I'm here from the Federal Defenders of San Diego on behalf of the appellant, Mr. Adolfo Barron-Galvan. When the district court gave the government an opportunity to sell it on the 60-day joint recommendation, the government gave the court reasons not to buy it. This was a clear breach of the plea agreement that affected Mr. Barron's substantial rights and the integrity of the judiciary. Accordingly, we're asking that Mr. Barron's sentence be vacated and the case remanded for resentencing and specific performance before a different district court judge. Counsel, you know, I know that's your characterization of it, but when I look at the very few things that Mr. Parmley said, at the beginning, the court said, well, how many times has he been deported? The defense lawyer said there are three contacts between March 8th and 9th. And the U.S. attorney says, I agree with that. Basically, I don't have other information. Twice, on one page, the government said we stand by our recommendation that was negotiated. And in the selling portion, you know, the government says he doesn't have a felony conviction. We stand by our recommendation. I mean, I could see how one could read it the way you do, but if it's ambiguous, what do we do about that in terms of determining whether there has or has not been a violation of the plea agreement? If one could understand it in at least two different ways, what do we do with that? Well, I would first suggest that it's not ambiguous. But to answer your question, if it were ambiguous, then the question is whether it's plain error and it would not be plain error. But here, it's not ambiguous for several reasons. First is that although the prosecutor stated that we're standing by our 60-day recommendation, he then rendered that statement illusory by making several statements as to why Mr. Barone's guidelines range didn't capture what he really did. And the prosecutor did that in three ways, first with respect to Mr. Barone's offense level, which is the vertical axis of the sentencing table, then with respect to his criminal history, which is the horizontal axis, and then with respect overall to the government's recommendation by calling it a quirk. And I can elaborate on each of those. First, with respect to the offense level, he stated that there's no way to increase the offense level. And the clear indication there was that, or rather than saying Mr. Barone only deserved an offense level of 8 because his criminal history consisted entirely of misdemeanors, the prosecutor said there was no way. So the clear message being sent there is that the government was constrained from recommending a higher offense level under the guidelines. Sotomayor Well, the other way to read it is, Your Honor, there is no way, don't do it. Well, I don't think that's clear when you look at it in the context of the message. Sotomayor Well, this may not be clear, but why isn't it at least ambiguous? Well, it's not because then the prosecutor coupled that with his recommendation being a quirk. And a quirk is something that would be a deviation from a regular or otherwise What he's saying is, look, the whole system is over to one side. This is the system we have, and we're standing by it. I mean, I don't understand why characterizing it as quirky makes, undoes the fact that he twice says we're standing by it, because it's implausible that a quirk It's consistent with our quirky system that we have here. Sotomayor Well, I think that the definition of a quirk is something that's inherently not trustworthy, or it's inherently, at least initially, something the Court should be skeptical of. In here, the prosecutor broke the United Front. He did say 60 days, but then he also said Mr. Barone's criminal history category was rendered irrelevant as a result of the government's sentencing recommendation. And so he used the word irrelevant. The clear message there is that the government's recommendation was understating or underrepresenting Mr. Barone's criminal history. It didn't adequately capture what Mr. Barone really did. Ginsburg Are you going to discuss the actual sentencing? Harrington I was not planning on it. Ginsburg All right. Kennedy Counsel, I have a concern that I want you to address. This was a this plea resulted from a plea agreement. Harrington Correct. Kennedy And in the plea agreement, there was a waiver of the right to appeal. Is that am I correct? Harrington Well, there was a waiver of the right to appeal if the sentence exceeded the high end of the guidelines range as calculated by the government. Kennedy Wasn't there a waiver if the government did not follow its agreement to recommend the sentence that the parties had agreed to under this fast-track proposal? Harrington There was a provision in the plea agreement that said if Mr. Barone believes that the government failed to comply with the plea agreement, he would object. However, I don't think that precludes this Court from reaching the merits in this case. Kennedy But the counsel sat there and did not object when the prosecutor made the statements to the Court in response to the Court's question. Isn't that true? Harrington Correct. Kennedy So didn't under the agreement, wasn't that a waiver, the right to appeal? Harrington It was not, because this Court – I would suggest that this Court followed what it did in United States v. Maldonado, where there was the identical provision of a plea agreement regarding waiver and failure to object. In Maldonado, this Court said that pursuant to the terms of the agreement, the defendant had failed to object and that he had waived that argument, but nevertheless it was going to review for plain error. And that is at 215F3-1046, Judge Gould, in 2000. And I would suggest that the same outcome is warranted here. And again, we're asking for a plain error standard, not a de novo standard. We recognize it wasn't preserved. And I would just briefly like to focus on the prejudice issue of the plaintiff's case. Sotomayor Let me just make sure I understand your argument here, that under the waiver of appeal, are you relying on the assertion that the government breached, or are you relying on an assertion that the Court imposed a sentence above the high end of the guideline range? Harrington We're relying on both. For the breach, while the government – while the Court did impose a high end, a sentence above the high end, so which entitles us to appeal. That's the provision we're relying on. Sotomayor Okay. Harrington With respect to the prejudice prong, Mr. Barone has to show that there is a reasonable probability the breach had an effect on the sentence. And I think there's four aspects of the record that show that's the case. First, the government gave the court, or the district court gave the government an opportunity to sell it on the 60 days, which suggests the court was clearly open to being persuaded by the government. Kagan Well, that was said somewhat ironically, it appears, or sarcastically. Harrington It perhaps was sarcastic, but I think what was clear at that point in the hearing was that even if 60 days were off the table, the district court expressed a tentative inclination to impose 15 months. But that was the case. Sotomayor Well, that was what I was going to ask you about again. On a plain error standard, it seemed pretty clear to me that the trial court had made up its mind and, you know, felt obliged to invite comments, but really had basically made up its mind. And so if that is the case, if that's how we read it, how do we find an injurious effect? Harrington Well, I don't think that's the case, because, again, it was a tentative inclination that the district court expressed. And then the court actually asked on the record defense counsel about the propriety of a variety of lower sentences. So on pages 10 to 11 of the ER, the court said, tell me about 14 months, what about 13 months, what about 12 months? So the court was actively considering intermediate sentences. Even if 60 days were off the table, a sentence under 15 months was still an open and live possibility. And had the government not breached by giving by breaking the United Front and giving the court reasons to ultimately impose the 15 months, there's a reasonable probability Mr. Barone would have received an intermediate sentence. And I see I have a short amount of time. I'd like to remain in a reservative if the Court has no further questions. Sotomayor Certainly, we may do that. Harrington Thank you. May it please the Court, my name is Larry Spong, I represent the United States in this case. Often just a look at this. Sotomayor Could you raise the microphone? It's a little hard to hear me. Thank you. Harrington Often just looking at a transcript, you don't get the feel for what's really happening at a sentencing or in a courtroom. And I think this is a case where counsel has done a nice job of looking at a sentence and trying to come up with a version that supports her. But the language here tells us that this was a court that was somewhat hostile, not hostile in a pejorative sense, but hostile in that he thought, number one, he'd already made up his mind, and number two, he thought this plea agreement was not just kind of ridiculous, really. And that's the environment this was taking place in. And it's clear from the court, he says things like, you have to forgive me. My problem is simply this. I'm going to tell you right now, I can't see imposing less than 15 months. Those are the things that he introduces the case with from pages 8 to 10 of the ER. Kagan What about the substantive question, then? I mean, I – he did seem very adamant, and the question was, why was he so adamant as to the substantive sentence? It – from the little I know about Santiago's sentences of this kind, this was high, quite high, and even though it's only 15 months. And his reasons seem to be some pretty old DUI convictions, and that he had a family in the United States, so he was likely to come back. Well, the second is true of just about everybody who was prosecuted for these crimes. And the first seems pretty inappropriate in the sense that these were 9-year-old DUIs. Carvin I would suggest it's not inappropriate. They were old, but there were five of them in a three-year period. And then he had in the two years, in fact, one of them, just a few months prior to this offense, two under-the-influence convictions. So he's still – But not while driving. Not while driving, but still, he's got a history of not being deterred from driving. That's what the judge is like. He's saying, this guy isn't deterred. He's got five convictions. He still – Well, he was deterred, because after that, he didn't have any. Well – In 9 years. He didn't have any in 9 years, but he's still using. I think it's – But using something else. I mean, those were alcohol, as I understood them. No? I mean, I just – it just seemed, you know, a little over the top in the sense – or maybe a lot over the top, because he seemed totally focused on this notion that this guy was going to come and hurt somebody in a car, but there was no evidence that he'd been driving under the influence for 9 years. I agree. It had been, but he had still been – had been under the influence. He also used – it wasn't just the family contacts. He had been three times sent back in just the previous few months before this occurrence. And so the judge is looking at someone with a long record who has – who, again, isn't deterred from coming back, because he's just done it three more times. And so – But he was never convicted before, unlike a lot of people in the circumstances. Right. Like, it happens a lot. People come across. But if – I mean, I gather that the guidelines was what, 0 to 6 months? 0 to 6 months. The 60 days, I presume, represented some norm in the area that was agreed to. The government certainly thought that 60 days would be appropriate. Presumably. Actually, it was 95, right? He'd been in custody. Yeah. He had actually been in custody, right. It ended up being time served. But the judge here had – he had a statutory maximum of 24 months. The top of the guideline was 6 months. And he went right in the middle with 15 months, and he said – it's not only – if you credit, because you did – you pled early, I'm going to give you that credit. I'm not – the judge said he wanted to give him the top, but I'm going to give you credit for that. He went in between. You know, certainly we could disagree with the judge's reasoning, but his – it's not unreasonable for the judge, and it's not illogical for the judge to look at those – that history and say, you know, you just aren't being deterred either from coming back in or from using drugs. You've got a history of this. You know, I have real concerns for public safety and for deterrence, and that's why I'm giving you this sentence. We may not agree, but I don't know that we can call it unreasonable. Well, what effect, if any, is the defense waiver of a presentence report? Because at the end, the judge does say, if you want me to – I mean, I'll paraphrase. If you want me to, I'll get a presentence report, and this could affect my thinking on the appropriate sentence. And the defense counsel says, I'm prepared to move forward, but I want to be heard. I mean, they continue, certainly, to discuss it. But what do we do with that, if anything? I don't know if procedurally there's really anything you can do, but I think it just lends support to the government's position that everything that the court had before it, it was reasonable for it to rely on. It gave defendant – it gave defendant a chance. It said, I'll consider other things. Let's have a presentence report. And the defendant said no. And then, when it came time to what they allege is a breach, in which I would say, quite clearly, the government was trying to support its recommendation by pointing out what the guidelines are. Again, there was no objection. So I – and at that point, I would say there is a waiver. The one thing I would say is this is a clear waiver. The Mondragon decision doesn't really – it does discuss that actual language, and then it just says, therefore, we review for plain error. But it doesn't do any analysis, and, quite frankly, that couldn't be the case. Otherwise you have to go back and review it. Sotomayor, did you mention that the waiver does not apply because the length of the sentence imposed was greater than the guideline? I think the waiver applies to the breach argument. It does not apply to the other arguments about the sentence. Okay. So – so the substantive reasonableness of the sentence, which Judge Versailles is discussing now, is properly before us in your view? Yes. I would agree. Yes. The only part that I would say was waived was the breach part. And I would just say that although Mondragon did do that, it didn't do it with any analysis, and, quite frankly, if that were the case, if every time a waiver, a defendant could – could get away with that, the – the bargain between the government and the – and the defendant would be illusory, because I could say, well, I'm going to give up my right to appeal, but I know I'm going to get plain error review. That just can't be the law. There has to be some enforcement here. So I would say he – he did waive it. But even if he didn't waive it, quite clearly, if we look at the – what's going on here, this is a – a prosecutor who's being put on the spot. The court said, do you have any more to say? That's it? And even then the prosecutor tried. Well, I will. And then he came back, well, aren't you going to sell me on this? I mean, the court's really pushing the government here. And so what he does is he tries to explain, look, Your Honor, this is what the way the guidelines are. So in – in essence, he said, this is the way the guidelines are, so it is reasonable for us to do that. And had they objected, that's why we have plain error. Had they objected and said, oh, we think you're breaching, the – the prosecutor could have said, no, that's not what I'm doing, I'm explaining why, I'm trying to help here, that's what I'm trying to do, I'm trying to explain to the judge what's going on, but they didn't. And at worst, at worst, it's – as I believe Your Honor said earlier, it's subject to two different interpretations. If it is, then it's not plain. There's certainly no error that's plain. So I would say he waived that issue, but if not, there's certainly no plain error. If there are no further questions. Thank you, counsel. Thank you. Do you have some rebuttal time remaining? I'd like to touch on the substantive unreasonableness of the sentence. As Judge Berzon pointed out, the district court relied on two reasons primarily for imposing the 15 months. One was that Mr. Barone had several DUIs, but again, the most recent DUI was 9 years ago, and the two first DUIs he had were too old to score under the Guidelines, and the third one was, I think, just shy of scoring under the Guidelines. And so the court's specific answer was that the court's reasoning was that it was concerned Mr. Barone would come back and would specifically threaten American -- Well, I suppose he was probably thinking this man was not driving for the last 9 years, and we know he was using. It just didn't get caught driving under the possession. Right. What the record reflects is that Mr. Barone never got behind the wheel of a car after the first conviction. Well, where did he ever get that? Or, excuse me, that he --- well, that's correct. We don't know that. But the record reflects he was never convicted again of drunk driving, which presumably -- Right. But that doesn't prove that he wasn't driving. We know he was using him. We don't know whether he was driving for sure, but it's a pretty good bet. Well, then I would also point the Court to the other basis of the sentence, which was Mr. Barone's family and the fact that he was likely to re-entry to the United States. And as we used to show statistics in our brief, that is the majority of illegal re-entry defendants in the Southern District have family. And if that were the case for imposing an above-Guidelines variance, that would render the exceptional case the norm. I see that my time is up. Thank you. Thank you very much for your arguments. The case is submitted.
judges: Alarcon, Graber, Berzon